IN THE UNITED STATES DISTRICT COURT CLERK'S OFFICE
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION  2012 AUG -7 A 9:30

Walter L. Munns,  )
 )
        Plaintiff,  )
 )  Civil Action No. 5:11-cv-00393-SB
v.  )
 )
Michael J. Astrue, Commissioner  )  **ORDER**
of Social Security,  )
 )
        Defendant.  )
 )

This is an action brought pursuant to section 205(g) of the Social Security Act ("the Act"), codified at 42 U.S.C. § 405(g), to obtain judicial review of the Commissioner of Social Security's ("Commissioner" or "the Defendant") final decision, which denied Plaintiff Walter L. Munns' ("Munns" or "the Plaintiff") claim for Disability Insurance Benefits ("DIB"). The record includes the report and recommendation ("R&R") of a United States Magistrate Judge, which was made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02(B)(2)(a). In the R&R, the Magistrate Judge recommends that the Court reverse the Commissioner's decision and remand the matter for further administrative action. The Defendant filed timely objections to the R&R, and the Plaintiff filed a response to those objections. See 28 U.S.C. § 636(b)(1) (providing that a party may object, in writing, to a Magistrate Judge's R&R within fourteen days after being served with a copy).



## BACKGROUND

### I. Procedural History

The Plaintiff was born on May 15, 1951, and he was fifty-five years old when he applied for DIB. He completed high school and three years of college, and he served in

and retired from the Air Force, for which he currently receives a military retirement pension. During his service, the Plaintiff worked as a fuel specialist and a munitions maintenance worker. The Plaintiff has other past relevant work experience as a 911 dispatcher, a forklift operator, and a security guard.

The Plaintiff applied for DIB on June 13, 2007, alleging disability beginning on April 5, 2007, due to post traumatic stress disorder ("PTSD") (stemming from his service in Vietnam), depression, anxiety, and migraine headaches. His application was denied initially on July 31, 2007, and upon reconsideration on November 5, 2007. The Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ"), and on May 4, 2009, ALJ Chilton C. Hicks held a hearing at which the Plaintiff and a vocational expert ("VE") testified. On October 8, 2009, the ALJ issued a decision denying benefits. On October 19, 2009, the Plaintiff requested review of the ALJ's decision, but the Appeals Council declined review, making the ALJ's decision the final decision of the Commissioner for purposes of judicial review under 42 U.S.C. § 405(g). The Plaintiff filed the instant action on February 17, 2011.

## II. **Medical Evidence**

### A. **Saluda Counseling Center**

The Plaintiff began receiving treatment at the Saluda Counseling Center in December of 2004. Treatment notes indicate that the Plaintiff was diagnosed with major depressive disorder and adjustment disorder with depression on December 2, 2004. The notes also indicate that the Plaintiff had a history of PTSD symptoms and that he was having marital problems. In addition, the Plaintiff was taking Effexor, which was prescribed

by Dr. McMeekin.

The Plaintiff was seen on a regular basis by licensed clinical social worker Tracy Reyes at the Saluda Counseling Center between December 2004 and January 2006. From January through April 2006, the Plaintiff saw therapist Marsha Jackson, but he began seeing Reyes again beginning in April 2006 and continuing through 2008 aside for two months in 2008 (February and March) when Reyes was on maternity leave. Throughout his sessions at the Saluda Counseling Center, the Plaintiff reported problems with PTSD, depression, anxiety, and insomnia.

On February 6, 2008, Jackson completed a Psychiatric/Psychological Impairment Questionnaire of the Plaintiff, noting that the Plaintiff's primary symptoms included major depressive disorder, PTSD, and a panic attack, for which he was hospitalized on November 18, 2007. Jackson opined that the Plaintiff was markedly limited in his ability to maintain attention and concentration for extended periods; his ability to perform activities within a schedule, maintain regular attendance, and be punctual with customary tolerance; and his ability to work in coordination with or in proximity to others without being distracted by them. Jackson also noted that the Plaintiff was mildly limited in his ability to interact appropriately with the general public; markedly limited in his ability to ask simple questions or request assistance; and markedly limited in his ability to accept instructions and respond appropriately to criticism from supervisors. According to Jackson, the Plaintiff experienced episodes of deterioration or decompensation due to PTSD symptoms, and she noted that the Plaintiff was incapable of tolerating even "low stress" at work. (Tr. at 373.)

On October 6, 2008, Reyes completed a Psychiatric/Psychological Impairment Questionnaire of the Plaintiff. Reyes stated that the Plaintiff was "unable to function in

3

daily out of home activities due to PTSD symptoms triggered." (Tr. at 450.) She indicated that the Plaintiff was moderately limited in understanding and memory and markedly limited in the following categories: his ability to carry out detailed instructions; his ability to maintain attention and concentration for extended periods; his ability to work in coordination with or in proximity to others without being distracted by them; his ability to make simple work related decisions; his ability to complete a normal workweek without interruptions from psychologically based symptoms; and his ability to perform at a consistent pace without an unreasonable number and length of rest periods. She also indicated that the Plaintiff was markedly limited in all areas of social interactions and in his ability to respond appropriately to changes in the work setting. Reyes noted that the Plaintiff was unable to tolerate even "low stress" at work because he assumed others were sabotaging his work.

### B. Metrolina Neurological Associates, P.A.

On April 9, 2007, Dr. Howard Mandell of Metrolina Neurological Associates saw the Plaintiff on a referral. According to Dr. Mandell, the Plaintiff had muscle tension headaches related to depression, stress, poor sleep, and rebound. Dr. Mandell instructed the Plaintiff to discontinue use of over-the-counter medications and prescribed Zanaflex. On a follow-up on June 13, 2007, Dr. Mandell noted that the Plaintiff had chronic daily headaches secondary to depression, and he prescribed Cymbalta in addition to recommending the continued use of Zanaflex. On September 10, 2007, the Plaintiff indicated to Dr. Mandell that he continued to have headaches and was still depressed. The Plaintiff reported that he would be awake for two or three days and then crash. Dr. Mandell prescribed Seroquel to help the Plaintiff sleep. Dr. Mandell again examined the Plaintiff on December 12, 2007, and he indicated he believed psychiatry would be helpful for the Plaintiff's underlying



4

depression. Dr. Mandell examined the Plaintiff on April 28, 2008, noting that the Plaintiff was still depressed but that he was neurologically "quite normal" and that he did not need to continue to see him except on an as-needed basis.

### C. Psychiatric Consultant Edward Waller

Upon review of the Plaintiff's file, psychiatric consultant Waller completed a residual functional capacity ("RFC") assessment of the Plaintiff on July 23, 2007. Waller concluded that the Plaintiff was moderately limited in the ability to carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number of lengthy rest periods. Waller found that the Plaintiff was moderately limited in the ability to interact appropriately with the general public, the ability to accept instructions and respond appropriately to criticism from supervisors, and the ability to get along with coworkers and peers without distracting them or exhibiting behavioral extremes.



Waller also completed a Psychiatric Review Technique Form on July 23, 2007, noting an affective disorder of major depressive disorder and anxiety-related disorders of PTSD and panic attacks. Waller indicated a mild functional limitation related to the restriction of activities of daily living, moderate limitations in difficulties in maintaining social functioning and maintaining concentration, persistence, or pace, and no episodes of decompensation.

### D. Psychiatric Consultant Kevin King

Psychiatric consultant King completed a Psychiatric Review Technique Form on November 5, 2007. The medical disposition for impairment was "Not Severe," and the diagnosed affective disorder was depression. King indicated mild functional limitation related to the activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace, as well as no episodes of decompensation.

### E. Veterans Administration Medical Center ("VAMC")

Medical health providers at the VAMC began seeing the Plaintiff in March of 2008. The Plaintiff tested positive for PTSD, and his records indicated that he was already being treated for depression. The Plaintiff continued to see the doctors at the VAMC through November of 2008.

Ami Patel, M.D., a psychiatrist with the Department of Veterans Affairs, completed a Psychiatric/Psychological Impairment Questionnaire of the Plaintiff on March 19, 2009. The Plaintiff's diagnoses were PTSD and major depressive disorder recurrent and moderate. Dr. Patel noted that the Plaintiff was markedly limited in his ability to remember locations and work-like procedures and in his ability to understand, remember, and carry out detailed instructions. Dr. Patel also noted that the Plaintiff was markedly limited in his ability to maintain concentration for extended periods; his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; his ability to sustain ordinary routine without supervision; his ability to work in coordination with or in proximity to others without being distracted by them; and his ability to complete a normal workweek without interruptions from psychologically based symptoms and to



perform at a consistent pace without an unreasonable number and length of rest periods. Dr. Patel found the Plaintiff to be markedly limited in all areas of social interaction, except for the ability to ask simple questions or request assistance, as to which Dr. Patel found the Plaintiff to be moderately limited. Dr. Patel indicated that the Plaintiff was markedly limited in his ability to respond appropriately to changes in the work setting and in his ability to travel to unfamiliar places or use public transportation. Dr. Patel noted that the Plaintiff experienced episodes of deterioration or decompensation in work-like settings and that he was incapable of tolerating even "low stress" at work due to severe symptoms of PTSD and major depressive disorder, refractory of medications, and severe mood disturbances.

### F. Piedmont Medical Center

Doctors at Piedmont Medical Center examined the Plaintiff in August 2002 due to syncope. Doctors found no evidence of neurocardiogenic etiology. The Plaintiff underwent a CT scan of his neck on August 7, 2002, and his cartoid vessels were normal.

The Plaintiff had a chest x-ray on October 4, 2003, which indicated no acute cardiopulmonary process.

Tthe Plaintiff presented to the emergency room on July 2, 2004, complaining that his right eye was red and painful. He was diagnosed with corneal abrasion, treated and discharged.

The Plaintiff again presented to the emergency room on September 19, 2004, complaining of non-traumatic eye pain. He was diagnosed with a corneal ulcer, treated and released, with instructions to follow-up with the Rock Hill Eye Clinic.

The Plaintiff was transported to the emergency room on May 15, 2005, complaining of a headache. He was diagnosed with a migraine headache, treated and released.

7

On July 6, 2005, an MRI indicated that the Plaintiff had mild scattered white matter slightly greater than expected for his age, but "probably still represents chronic ischemic microaniopathic change or sequelae of migraines/vasculitis." (Tr. at 588.) No abnormal enhancement was present, but clinical correlation was needed.

The Plaintiff presented to the emergency room on September 18, 2007, and was diagnosed with anxiety-panic attack. He was treated and discharged with a prescription referral for follow-up care.

On January 4, 2009, the Plaintiff presented to the emergency room with a head laceration. He indicated that his medications were making him dizzy and that he had passed out and hit his head. He was given a CT exam of his head and spine, an electrocardiogram, and his laceration was treated.

### III. The Administrative Proceedings

#### A. The Plaintiff's Hearing Testimony

At the hearing on May 4, 2009, the Plaintiff testified that he was separated from his spouse, had no dependent children, and was living with his girlfriend in a one-room efficiency. He testified that he was last employed in 2007 by Venturi as a forklift operator, but that he left this position to avoid confrontation with another employee. He testified that he left another job at TextRun because he felt he was being harassed by a supervisor because he had too many absences due to doctor's appointments. The Plaintiff testified that before the job at TextRun, he was employed as a security guard at Carolina Turkey, a job he quit after he had to shoot a migrant worker who was being detained during a domestic dispute police call.

The Plaintiff testified that several physicians had treated him and that he currently was seeing a psychologist at Solutions Center. The Plaintiff testified that he was affected by events that occurred while he was in the military. He also testified that his wife, a Thai national, was murdered in Thailand, and that he, along with his stepson, had pursued and killed the perpetrators. The Plaintiff testified that while serving in Dahiran, Saudi Arabia, a Marine barracks was hit by a missile, killing several soldiers.

The Plaintiff testified that he was taking medication and that he suffered from side effects like nausea, dizziness, sleepiness, diarrhea, and short-term memory loss. He also testified that he had passed out on four occasions in the past two months for no explainable reason. The Plaintiff stated that he did not leave his house except to get groceries or to go to the doctor. He claimed that he sometimes did household chores, but only when his girlfriend was at home to monitor him. The Plaintiff testified that his girlfriend administered his medications due to his memory loss, and he testified that he often played with the dog or walked to a small park about a block from his residence. The Plaintiff stated that he had recurring migraine headaches that began after an accident in 1979. He stated that he had developed a skin problem just prior to the time of the hearing. The Plaintiff testified that in addition to the depression, PTSD, headaches, and skin problem, he also had an unusually low heart rate that occasionally caused him to lose consciousness.

### B. Vocational Expert Testimony

Vocational expert Roy Sumter testified at the hearing and described the Plaintiff's work activity for fifteen years prior to the alleged onset date. The VE testified regarding the

Plaintiff's prior work, including the exertional levels and specific vocational preparation that each job required according to the Dictionary of Occupational Titles ("DOT"). Ultimately, the VE testified that the Plaintiff's work as a 911 dispatcher was sedentary and five; that his work as a forklift operator was medium and three; that his work as a security guard was light and three; that his work as a fuel specialist was medium and six; and that his work as a munitions maintenance worker was medium and six. The ALJ then asked the VE what "medium on down" jobs would be available for a hypothetical person whose age ranged from fifty-five to fifty-seven; who had three years of college; who had no exertional limitations; who could perform simple routine repetitive tasks for two hours at a time without special supervision; who could maintain a regular work schedule but might miss one day a month due to PTSD and depression; who would perform better in a low-stress job setting that did not require ongoing interaction with the public; and who could make simple work-related decisions, request assistance from others, and use available transportation. In response, the VE testified that three jobs would be available: (1) kitchen helper, medium, specific vocational preparation of two; (2) dinning room attendant, medium, specific vocational preparation of two; and (3) food assembler, medium, specific vocational preparation of two.

The Plaintiff's attorney asked the VE whether a person who was absent more than two or three times per month could be successful in those positions. The VE opined that there would be not be a problem with an absence of three days, but he believed that four days would be incompatible with competitive employment. The Plaintiff's attorney asked the VE whether a person with marked limitation in the ability to work in coordination with or in proximity to others without being distracted by them could be successful, and the VE

10

opined "no." The VE also stated "no" in response to a question regarding whether a person who had difficulty accepting criticism from supervisors and responding appropriately could be successful in these three positions. In response to a question regarding concentration, the VE opined that a person who lost track of time due to intrusive thoughts, so that he could not perform his job for ten minutes at a time many times over an eight hour period, would not be able to hold competitive employment.

## STANDARD OF REVIEW

### I. The Magistrate Judge's R&R

The Magistrate Judge makes only a recommendation to the Court. The recommendation has no presumptive weight, and the responsibility for making the final determination remains with the Court. Mathews v. Weber, 423 U.S. 261, 269 (1976). The Court reviews de novo those portions of the R&R to which specific objection is made, and the Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

### II. Judicial Review of a Final Decision

The role of the federal judiciary in the administrative scheme as established by the Social Security Act is a limited one. Section 205(g) of the Act provides that "[t]he findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Consequently, judicial review . . . of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). "Substantial evidence" is defined as

11

evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (quoting Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966)). In assessing whether substantial evidence exists, the reviewing court should not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of" the agency. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (alteration in original).

## DISCUSSION

I. **The Commissioner's Final Decision**

The Commissioner is charged with determining the existence of a disability. The Social Security Act, 42 U.S.C. §§ 301-1399, defines "disability" as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of no less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). This determination involves a five-step inquiry:

> [The first step is] whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so, the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work.

Mastro, 270 F.3d at 177 (citing 20 C.F.R. § 416.920).

If the claimant fails to establish any of the first four steps, review does not proceed to the next step. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993). The burden of production and proof remains with the claimant through the fourth step. However, if the claimant successfully reaches step five, then the burden shifts to the Commissioner to provide evidence of a significant number of jobs in the national economy that the claimant could perform, considering the claimant's medical condition, functional limitations, age, education, and work experience. Walls, 296 F.3d at 290.

Here, the ALJ determined that the Plaintiff had not engaged in substantial gainful activity since the alleged onset of disability, April 5, 2007. At the second step, the ALJ found that the Plaintiff had the following severe impairments: PTSD, depression, and panic attacks. Third, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. I, § 12.04.[1] The ALJ then determined that the Plaintiff had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: "the claimant is limited to simple, routine and repetitive tasks; he can perform these tasks in two-hour intervals without special supervision in a low stress setting with no interaction with the public missing one day a

---

[1] Listing 12.04 contains A, B, and C criteria. For a claimant to be found disabled, he must satisfy the requirements in A and B, or the requirements in C. See 20 C.F.R., Part 404, Subpart P, App. I, § 12.04. To satisfy the B criteria of Listing 12.04, the claimant's mental impairment must result in at least two of the following: marked restriction of activities of daily life; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or related episodes of decompensation, each of extended duration.

13

month due to his PTSD and depression." (Tr. at 10.) At step four, the ALJ found that the Plaintiff's RFC did not preclude him from performing past relevant work as an unarmed security guard. Additionally, the ALJ found that there were three other jobs in the national economy that the Plaintiff could perform. Therefore, the ALJ found that the Plaintiff was not disabled.

## II. **The Parties' Briefs**

### A. **The Plaintiff's Brief**

In this action, the Plaintiff asserts that: (1) the ALJ failed to properly establish that Plaintiff was not disabled under Medical Listing 12.04; (2) the ALJ failed to properly weigh the medical opinions; (3) the ALJ failed to properly evaluate the Plaintiff's credibility; and (4) the ALJ erred in finding that the Plaintiff could perform his past work or alternative work.

With respect to his first argument, the Plaintiff asserts the he is per se disabled under Medical Listing 12.04, and he disputes the ALJ's finding that the Plaintiff has only mild or moderate (as opposed to marked) difficulties in maintaining concentration, persistence, or pace, as well as the ALJ's finding that the Plaintiff did not suffer from repeated episodes of decompensation, each of extended duration.

In his second argument, the Plaintiff asserts that the ALJ committed reversible error by not giving controlling weight to the opinions of treating psychiatrist Dr. Patel and treating counselor Reyes. Specifically, the Plaintiff argues that the ALJ did not cite any substantial medical findings contrary to the treating physicians' opinions or identify any inconsistencies within those opinions that would justify giving them less weight.

Next, the Plaintiff argues that the ALJ incorrectly evaluated his credibility because

14

no medical evidence supports the ALJ's finding that the Plaintiff's medications controlled his psychiatric symptoms. The Plaintiff contends that the ALJ ignored evidence demonstrating significant difficulties in performing ordinary activities of daily living.

Finally, the Plaintiff argues that the ALJ erred in finding that the Plaintiff could perform his past work as well as other work. The Plaintiff argues that his RFC does not meet the requirements for a security guard; he also argues that the ALJ failed to show that he can perform alternative jobs in the national economy.

### B. The Defendant's Brief

In response to the Plaintiff's claims, the Defendant argues that: (1) the Plaintiff is not per se disabled under Listing 12.04; (2) the ALJ reasonably weighed the medical opinions in light of the entire record; (3) the ALJ reasonably determined that the Plaintiff's subjective complaints of disabling mental limitations lacked credibility; and (4) the ALJ reasonably relied on the VE's testimony in finding that the Plaintiff could perform his past work and other work existing in significant numbers in the national economy.

With respect to the Plaintiff's first claim, the Defendant argues that the ALJ had reasonable grounds to determine that the Plaintiff had only mild to moderate limitations in maintaining concentration, persistence, or pace, citing the fact that the Plaintiff had been enrolled in an online college course and that he played video games.

Next, the Defendant argues that it was appropriate for the ALJ to give Dr. Patel's and Reyes' opinions less weight because their treatment notes were "not reflective of depression or anxiety to the degree of precluding all work" and because the state agency physicians opined that the Plaintiff had only mild to moderate, rather than marked, difficulties in maintaining concentration, persistence, or pace. (See Entry 13 at 11 (citing

15

Tr. at 13, 468-77, and 495-99).)

Third, the Defendant argues that the ALJ's credibility assessment was correct, contending that the ALJ reasonably relied on the Plaintiff's activities of daily living in discounting his claims of debilitating mental limitations and that it was reasonable for the ALJ to find that the Plaintiff's medications effectively controlled his symptoms.

Finally, the Defendant contends that the ALJ reasonably relied on the VE's testimony in finding that the Plaintiff could perform his past relevant work as a security guard as well as three other unskilled jobs.

## III.    **The Magistrate Judge's R&R and the Defendant's Objections**

In the R&R, the Magistrate Judge outlined the facts and the parties' arguments, ultimately recommending that the Court reverse and remand the Commissioner's final decision for further administrative action.

First, the Magistrate Judge found that the Commissioner erred in finding that the Plaintiff did not meet the paragraph B criteria of Medical Listing 12.04. Specifically, the Magistrate Judge determined that the Plaintiff's enrollment in one online class and his testimony that he could play video games, without more, was not the type of substantial basis needed to determine that the Plaintiff only had mild difficulties of concentration, persistence, or pace. Furthermore, the Magistrate Judge found that the ALJ failed to address other evidence in the record as well as the treating sources' opinions that the Plaintiff had marked limitations in maintaining concentration, persistence, or pace.

Next, the Magistrate Judge found that the ALJ erred in his treatment of the medical opinions in the record. Specifically, the Magistrate Judge noted that medical notes supported the opinions of Dr. Patel and Reyes and that these opinions were consistent with

16

each other and with other treating sources who physically examined the Plaintiff.

Having determined that the ALJ erred by (1) finding that the Plaintiff did not meet the paragraph B criteria of Medical Listing 12.04 and by (2) dismissing the opinions of the Plaintiff's treating physicians without adequate basis or explanation, the Magistrate Judge declined to consider the Plaintiff's remaining claims.

The Defendant filed objections to the R&R, arguing that substantial evidence supports the Commissioner's final decision.

## IV.    The Court's Analysis

After a thorough review of the record, the Court agrees with the Magistrate Judge's findings and conclusions.

First, the Court agrees with the Magistrate Judge that the ALJ erred in determining that the Plaintiff did not meet the paragraph B criteria in Medical Listing 12.04. In his objections, the Commissioner cites Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005), in support of the ALJ's finding. In Johnson, the court found that the claimant's participation in certain activities provided substantial evidence to rebut the claimant's subjective allegations of pain. However, in Johnson, the claimant's subjective allegations of pain were not corroborated by objective medical evidence, and they were inconsistent with the claimant's testimony regarding her routine activity. Here, the issue is *not* whether the Plaintiff's activities are consistent with subjective allegations of pain; instead, the issue is whether the Plaintiff's activities of taking an online college course and playing video games support the ALJ's finding that the Plaintiff does not have marked difficulties in maintaining concentration, persistence, or pace, particularly in light of testimony and medical evidence to the contrary. Because there is no evidence to demonstrate whether the Plaintiff

17

successfully engaged in these activities, and because there is medical evidence (including the opinions of treating sources) that the Plaintiff had marked difficulties in maintaining concentration, persistence, and pace, the Court finds that the ALJ erred in his step three analysis. Additionally, after reviewing the record as a whole, the Court does not believe that the opinions of the two non-examining State agency physicians provide substantial evidence to support the Commissioner's finding on this issue. See Smith v. Schweiker, 795 F.2d 343 (4th Cir. 1986) ("A non-examining physician's opinion cannot, by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted by all of the other evidence in the record."). Moreover, the Court agrees with the Magistrate Judge that the ALJ provided no support for his finding that the Plaintiff experienced no episodes of decompensation of extended duration, particularly in light of treating source opinions to the contrary. In light of the foregoing, the Court agrees with the Magistrate Judge that remand for further administrative action is appropriate.

Next, the Court agrees with the Magistrate Judge that the ALJ failed to properly weigh the opinions of the Plaintiff's treating sources. Courts evaluate and weigh medical opinions pursuant to the following list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physicians' opinion, (4) the consistency of the opinion within the record, and (5) whether the physician is a specialist. 20 C.F.R. § 404.1527(d). The Fourth Circuit has held that "the opinion of a claimant's treating physician must be given great weight." Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). As the Fourth Circuit recently stated:

Affording the greatest weight to the opinion of two non-treating physician

18

sources cannot be supported by substantial evidence when a treating source, albeit a non-acceptable treating source, has provided substantial evidence to the contrary. The substantial evidence standard is concerned with limiting an ALJ to basing a determination regarding a claimant's status on evidence that is both material and reliable. This is precisely why "[g]enerally, [the Commissioner] give[s] more weight to opinions from treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairments."

Foster v. Astrue, 826 F. Supp. 2d 884, 886-87 (4th Cir. 2011) (interpreting 20 C.F.R. § 404.1527(d)(2)). That being said, an ALJ may disregard a treating physicians's opinion if there is persuasive contradictory evidence. Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir. 1986). Nevertheless, if an ALJ chooses to discredit the report of the treating physician, he must fully articulate the reasons for doing so. DeLoatche v. Heckler, 715 F.2d 148, 150 (4th Cir. 1983).

Here, the ALJ accorded the opinions of non-treating State agency sources greater weight than the opinions of treating sources (Dr. Patel and Reyes). Because the treating source opinions were consistent with one another and were well supported by the medical notes and evidence and because the ALJ failed to provide persuasive, adequate reasons to support his decision to give greater weight to the State agency opinions rather than to the treating source opinions, the Court agrees with the Magistrate Judge that remand is appropriate.

Finally, because reconsideration of the above issues will impact the Plaintiff's final two claims–(1) that the ALJ erred in evaluating the Plaintiff's credibility and (2) that the ALJ erred in finding that the Plaintiff could perform his past relevant work or other work–the Court agrees with the Magistrate Judge that consideration of those claims is unnecessary at this time. See Boone v. Barnhart, 353 F.3d 203, 211 n.19 (3d Cir. 2003) (remanding on

a particular ground and declining to address additional grounds).

## CONCLUSION

Based on the foregoing, it is hereby

**ORDERED** that the Magistrate Judge's R&R (Entry 21) is adopted and incorporated herein; the Defendant's objections (Entry 23) are overruled; and this matter is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative action.

**IT IS SO ORDERED.**

Sol Blatt, Jr.
Senior United States District Judge

August 6, 2012
Charleston, South Carolina

## ADDENDUM

Should this remand result in the award of benefits, the Plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time to file a petition for attorney's fees under 42 U.S.C. § 406(b), until thirty days subsequent to the receipt of a notice of award of benefits from the Social Security Administration. ***This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.***[2]

---

[2] This language was adapted from Stutts v. Astrue, 489 F. Supp. 2d 1291, 1295 (N.D. Ala. 2007).